Isadore Bookstein, J.
This is a proceeding (Civ. Prac. Act, art. 78) brought by the members of the Civil Service Commission of the County of Orange to require the State Civil Service Commission to approve a change in the County Civil Service rules, which would classify the office of the County Superintendent of Highways in the unclassified service provided by section 35 of the Civil Service Law.
The proceeding is based on the facts that Local Law No. 1 of the county for the year 1954 creates a Department of Highways of the County of Orange, headed by the County Superintendent of Highways, and that since the local law created a department in the county government, the head thereof is required to be in the unclassified service by virtue of the provisions of subdivision (e) of section 35 of the Civil Service Law, which requires that there be included in the unclassified service “(e) the head or heads of any department of the *382 government who are vested with authority, direction and control over a department, and who have power and authority to appoint and remove officers and employees therein;”.
The first sentence of section 35 provides that the civil service of the State and each of its civil divisions shall be divided into the classified and unclassified service. Thus, it would appear that subdivision (e) applies to the head of a department of the government of a civil division of the State.
In issue in this proceeding are the provisions of section 100 of the Highway Law which empower County Boards of Supervisors to appoint County Superintendents. This section provides for the removal of such a Superintendent by the Board of Supervisors, fixes a four-year term of office for the Superintendent, refers to the power of the State Department of Public Works to remove a County Superintendent as provided in section 101 of the Highway Law and finally provides that in the event a Board of Supervisors shall fail to appoint a County Superintendent, the State Department of Public Works “shall appoint a county superintendent from the eligible list of the county, and fix his salary, which, together with his expenses, shall be a county charge, payable monthly”.
The local law of 1954 in its provisions with respect to removal by the Board of Supervisors and with respect to the four-year term of office parallels the language of section 100 of the Highway Law. The local law also empowers the County Superintendent to appoint a deputy with power to act for and have the powers and duties of the Superintendent during his inability to act or during the regular or approved vacation period of the Superintendent. This language parallels provisions in section 102-a of the Highway Law.
The local law generally authorizes the Superintendent to make appointments of persons to positions of employment in the department and to fix their compensation as well as to have the supervision and control of all such persons. Presumably, the County Superintendent would exercise power to remove departmental employees under the procedure set forth in section 75 of the Civil Service Law.
Accordingly, since the County Superintendent was made the head of a department of government of the county by the 1954 local law, and since the Superintendent is vested with authority, direction and control over the department and with power and authority to appoint and remove officers and employees therein, which are the requirements set forth in subdivision (e) of section 35 of the Civil Service Law the principal question of this proceeding occurs — namely, whether the office of the *383 Superintendent must, in accordance with subdivision (e) of section 35 of the Civil Service Law be placed in the unclassified service.
Section 301 of the County Law (subd. 5, par. c) clearly authorizes Boards of Supervisors to adopt local laws with respect to the establishment of departments and the prescription of powers and duties thereof. This is the power which the Board of Supervisors of the County of Orange exercised in 1954 when it adopted the local law creating the Department of Highways, and such exercise of power is not inconsistent with or prohibited by any act of the Legislature that has been called to my attention. In fact, the State Comptroller in 1955 rendered an opinion to the effect that a county did have power to adopt a local law establishing a County Department of Public Works (11 Op. St. Comp., p. 362).
While it has been generally argued in this proceeding that the office of County Superintendent of Highways has heretofore been regarded as a classified position in the competitive class in every county in the State except those in the metropolitan district, several counties have departed from the general pattern and now have Departments of Public Works headed by Superintendents of Public Works. These provisions appear in the alternative form of county government laws individually applicable to the Counties of Nassau (L. 1936, ch. 879, §§ 1201, 1202), Westchester (L. 1937, ch. 617, §§ 47, 48), Suffolk (L. 1958, ch. 278, §§ 801-803), and Erie (Local Law of 1959, §§ 1001, 1002). In addition, the County of Monroe, which operates under an optional form of county government, has a similar arrangement (Optional County Government Law, §§ 404, 1016). It is noted that in the case of Erie County this result was accomplished by a County Charter drafted and adopted locally as a local law under the County Charter Law (County Law, art. 6-A). Thus, it appears that upon reorganizations of county government, the creation of a County Department of Public Works is viewed as a desirable improvement (cf. Alternative County Government Law, §§ 200, 350) and that the Legislature has made this possible on several occasions and by various means.
The State of New York has a strong home rule tradition. The exercise of home rule powers through the adoption of local laws should, accordingly, be upheld wherever possible so that counties will be encouraged to utilize these powers in the operation of county government and the improvement thereof. In my view, home rule powers, including powers to adopt local laws, should be construed liberally because of the impor *384 taut objectives which home rule grants have in strengthening local government and making it responsive and effective.
We are fortunate to have the benefit of recent cases dealing with the question of whether certain county officials are or not heads of departments whose positions accordingly should be in the unclassified service. These cases are: Matter of Chase v. Falk (8 A D 2d 655, affd. 7 N Y 2d 817) and Matter of Neff v. Falk (10 A D 2d 789). In both of these cases, the claim for classification in the unclassified service was rejected, but the opinions of the Appellate Division have given us guideposts for application in this proceeding. In the Neff case, for example, the Appellate Division said (p. 790): “ The head of a department must be one who has more independent authority than is possessed by the respondent Becker and one who has control over an administrative division of government which is composed of an organization of some greater size and significance than is present here.” In that case, the court noted that “ several People ” worked under the supervision of respondent Becker, who held the office of County Fire Coordinator. In this case, the Highway Department of the County of Orange is a substantial department of county government and certainly qualifies as an administrative division of the government of the county. It can be compared with a department of public works in a city. Relatively, it would appear to be as significant in county government as the State Department of Public Works is in the State government.
A final problem relates to the wording of section 100 of the Highway Law, where, in describing the power of the State Department of Public Works to appoint a County Superintendent in the event a Board of Supervisors fails to do so, the law states that such appointment shall be made “ from the eligible list of the county ”, thus indicating that a competitive class appointment would be made. This provision appears to have been added to section 100 of the Highway Law when the Highway Law was codified in 1936. I construe it as merely a reference to the situation which then applied to all up-State counties where the position was regarded as one in the competitive class. But, I do not construe the reference to the eligible list as a restriction. If, for example, a list does not exist at the time a vacancy occurs or a four-year term of office expires — which is probably the usual situation — I would feel that the State Superintendent would have power to make a provisional appointment. Otherwise, the obvious purpose of the provision — to have an incumbent in the office and to guard against the creation of vacancies for substantial periods because of dis *385 agreements in the board of supervisors — would be frustrated. In this respect, it should he noted that the classification of the County Superintendent’s position in the competitive class is not entirely consistent with concepts generally applicable to the competitive class. For example, here we have a four-year term of office while provisions relating to terms of office do not generally apply to competitive class positions. Also, there are special removal procedures applicable to the County Superintendent and the general removal provisions of section 75 of the Civil Service Law do not, accordingly, appear to be applicable. In any event, subdivision (e) of section 35 of the Civil Service Law contains the more recent expression of the intention of the Legislature.
I conclude, therefore, that the petition of the County Civil Service Commissioners should be granted and that the position of County Superintendent of Highways, where the incumbent in his capacity, as such, heads a substantial County Department of Highways meeting the requirements of subdivision (e) of section 35 of the Civil Service Law and the principles enumerated in the Chase and Neff cases (supra), is required to be classified in the unclassified service. Petition granted.